

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00232-CR

———————————————————

KIMBERLY DAWN GRADNEY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR15445

---

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Kimberly Dawn Gradney appeals her theft conviction. *See* Tex. Penal Code Ann. § 31.03. In one issue, she argues that the trial court erred by denying her request for a jury instruction on the lesser-included offense of attempted theft. Because there is no evidence in the record that shows that Gradney is guilty of only attempted theft, we affirm.

## I. Background

While using a self-checkout register at Walmart, Gradney scanned and purchased some of the merchandise that was in her shopping cart but not all of it. The subtotal of the unpaid-for merchandise—eleven items—was $68.18.

In an office located on the other side of the store, asset-protection associate Kynnedy Gardner had been watching security cameras at the self-checkout registers. She watched as Gradney approached one of the registers and began her transaction. When she saw Gradney skip scanning items, Gardner notified her manager, John David Griffith. Griffith then notified Granbury Police, and dispatch contacted Officer Brittnie Bell, who happened to already be at Walmart dealing with another theft. Griffith, Gardner, and Officer Bell watched the rest of Gradney's transaction on the security cameras; they could see her from multiple angles. They saw her scan certain items, wave some items across the register without actually scanning them, skip scanning others altogether, wave multiple items in front of the scanner at one

time, and leave some items in the bottom of her shopping cart without scanning them.

During Gradney's transaction, a cashier stood nearby to help customers at the self-checkout registers. The cashier approached Gradney three times to void off certain items. Gradney did not ask the cashier for help or otherwise indicate that she was having issues scanning all her items.

After Gradney completed her transaction, she pushed her cart full of both paid-for and unpaid-for merchandise past the cash registers, past the theft-prevention alarms, and through the double doors at the entrance of the store. At that point, she had passed all points of sale and any opportunity to go back and purchase the unpaid-for merchandise.

Griffith, Gardner, and Officer Bell confronted Gradney on the sidewalk just outside the general merchandise doors. Griffith held onto her cart while they reviewed her receipt. Gradney initially appeared to be confused but then apologized and offered, "[I]f I didn't pay for something, I can go ahead and pay for it now." At some point, she reached for her purse as if she were going to flee, but Officer Bell's presence apparently prevented her from doing so. Griffith, Gardner, and Officer Bell then escorted Gradney to the asset-protection office and recovered the unpaid-for merchandise.

Officer Bell spoke with Gradney and recorded the conversation.[1] She asked Gradney if her leaving the store without paying for everything she had taken was considered theft, and Gradney responded that it was. At three different times during the conversation, Gradney admitted that she knew her actions constituted a theft.

At trial, the jury heard testimony from Griffith, Gardner, and Officer Bell; it viewed footage from the security cameras that had recorded Gradney's transaction from multiple angles; and it listened to the recorded conversation between Officer Bell and Gradney.

Griffith testified that Gradney's failure to scan and purchase all the items in her cart was not an accident; rather, it was a common way for people to intentionally steal from Walmart. He discussed three methods in which people would usually steal: bar-code switching, skip-scanning or fake-scanning in self-checkout, and simply walking out with merchandise in hand. Bar-code switching happens when people take the bar code off a cheaper item and place it on a higher-priced item so that when they scan it at self-checkout, the cheaper item rings up. Skip-scanning or fake-scanning can happen when a person using self-checkout places a cheaper item beneath a higher-priced item and scans only the cheaper item. Other times, the person will put items into her cart without scanning them or will leave items in her cart the entire time. Griffith recognized that accidents happened every day and that not everyone who

---

[1]At trial, Officer Bell explained that she used a microphone because she did not have a body camera at the time.

took unpaid-for merchandise did so intentionally. But when these "accidents" became a common trend for someone, Griffith and his team would pay closer attention to that person when she came into the store.

Gradney was one of those people. Griffith testified that before her arrest for this theft, he recognized her from two previous incidents at Walmart. In the first incident, Gradney's transaction and what she scanned did not ring up correctly because it appeared that she had switched the bar codes of two items and rang up the cheaper one and that she skipped scanning other items. Griffith explained that he had not stopped Gradney for that incident because he did not physically see her switch the bar codes and was not one hundred percent certain that it had been intentional.

Several months later, Gradney and another individual switched the bar code of a $60 fishing rod with the bar code for a 50-cent cup, so they ended up paying 50 cents for the fishing rod. Griffith testified that he had not detained her that day because he was not certain of her identity until after the fact. He explained that Walmart had a system he could use to look up transaction histories and that, using that system, he looked up the credit card number that Gradney had used for the first incident and found that the same credit card had been used in the second incident. He also checked the surveillance footage from that day and saw Gradney and the other individual together at the self-checkout register.

Gardner testified that before this incident, she was aware of Gradney "by previous apprehensions," explaining that "it[ wa]s something that she[ had] previously

done." Like Griffith, Gardner acknowledged that accidents happen. She explained, though, that she had been trained to differentiate between an accident and intentionally stealing. Gardner had realized that Gradney's failure to scan and pay for the $68.18 worth of merchandise was not an accident after seeing her skip the first two items.

Officer Bell testified that, in addition to this case, she had handled "a lot" of theft cases from Walmart. She described Gradney as having been cooperative, and it had appeared to her that Gradney understood why she was there and what was happening.

At the charge conference, Gradney argued that she was entitled to an instruction on the lesser-included offense of attempted theft. As support, she relied on the testimony of "two Walmart employees" who "said this was an attempt expressly." The trial court, relying on this court's holding in *Hickman v. State*,[2] denied the requested instruction.

---

[2]No. 02-19-00202-CR, 2020 WL 1949022, at *4 (Tex. App.—Fort Worth Apr. 23, 2020, no pet.) (mem. op., not designated for publication). In *Hickman*, we held that the trial court had correctly refused an instruction on attempted theft because, despite the appellant's contention that she had had "a change of heart" and had abandoned the stolen merchandise, the facts established a fully completed theft. *Id.* at *1, *4.

The jury found Gradney guilty of theft of property valued at less than $2,500 with two prior theft convictions,[3] a state-jail felony. *See* Tex. Penal Code Ann. § 31.03(e)(4)(D). The trial court sentenced her to two years' confinement.

## II. Discussion

In her sole issue on appeal, Gradney argues that the trial court erred by refusing to submit the lesser-included offense of attempted theft to the jury. She contends that Griffith's testimony "raised the issue of attempted theft" and cites the following:

> [Defense Counsel:] So you're saying that she attempted to take some things from you?
>
> [Griffith:] Yes. If I wouldn't have been there, where would it have been?

Contrary to Gradney's contention, a theft had already been completed by the time Griffith recovered the stolen merchandise. This testimony therefore does not provide the measure of proof necessary to support an instruction on attempted theft.

### A. Standard of Review and Applicable Law

Appellate courts review a trial court's refusal to submit a lesser-included-offense instruction for an abuse of discretion. *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023).

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included-offense instruction: (1) Are the elements of the lesser-included offense included within the proof necessary to establish the charged offense's elements? (2) Is

---

[3]Gradney stipulated to the two prior convictions as charged in the indictment.

there evidence in the record from which a jury could find the defendant guilty of only the lesser-included offense? *State v. Meru*, 414 S.W.3d 159, 161 (Tex. Crim. App. 2013); *Hall v. State*, 225 S.W.3d 524, 528, 535–36 (Tex. Crim. App. 2007). The first step is a legal question and does not depend on the trial evidence. *Hall*, 225 S.W.3d at 535. We reach the second step only if the requested lesser offense qualifies under the first step as a lesser-included offense. *Meru*, 414 S.W.3d at 162–64.

The second step is a fact determination based on all the evidence presented at trial. *Id.* at 163; *see Ritcherson v. State*, 568 S.W.3d 667, 677 (Tex. Crim. App. 2018) (admonishing that we cannot make a determination from isolated evidence in a vacuum). There must be some evidence directly germane to the lesser-included offense for the jury to consider before an instruction on a lesser-included offense is warranted. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). Indeed, the evidence must establish that the lesser-included offense is "a valid, rational alternative to the charged offense." *Hall*, 225 S.W.3d at 536.

Under the second step, we consider whether the record contains "(1) evidence that directly refutes or negates other evidence establishing the greater offense and raises the lesser-included offense or (2) evidence that is susceptible to different interpretations, one of which refutes or negates an element of the greater offense and raises the lesser offense." *Ritcherson*, 568 S.W.3d at 671. If more than a scintilla of evidence raises a fact issue about whether the defendant is guilty only of the lesser-

8

included offense, we must conclude that the trial court abused its discretion by failing to give an instruction on the lesser-included offense. *See id.*; *Hall*, 225 S.W.3d at 536.

A person commits theft if she unlawfully appropriates property with intent to deprive the owner of property. Tex. Penal Code Ann. § 31.03(a). "Appropriate" means to acquire or otherwise exercise control over property other than real property. *Id.* § 31.01(4)(B). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b). A person commits a criminal attempt if, with specific intent to commit an offense, she does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. *Id.* § 15.01(a).

Intent may be inferred from the acts, words, or conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982); *Turner v. State*, Nos. 02-11-00070-CR, 02-11-00071-CR, 2013 WL 530972, at *1 (Tex. App.—Fort Worth Feb. 14, 2013, pet. ref'd) (mem. op., not designated for publication). "Specific intent to commit theft can be inferred from the surrounding circumstances." *Coronado v. State*, 508 S.W.2d 373, 374 (Tex. Crim. App. 1974).

**B. Analysis**

We focus only on the second step of our analysis because, as a matter of law, attempted theft is a lesser-included offense of the charged offense of theft. Tex. Code

9

Crim. Proc. Ann. art. 37.09(4); *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016).[4]

Gradney argues that Griffith's testimony supplies some evidence germane to attempted theft. To support her argument, however, Gradney cites only a snippet of the relevant testimony. To provide a more accurate representation of the testimony, we include it here:

[Defense Counsel:] . . . . But you recovered everything?

[Griffith:] Yes, sir.

[Defense Counsel:] Okay. So what did you lose?

[Griffith:] What did we lose? We recovered that day, but she passed all points of sale with it.

. . . .

[Defense Counsel:] So she didn't permanently deprive you of anything?

[Griffith:] She purposely did, yes. She purposely took merchandise --

[Defense Counsel:] That's not what I said. I said she did not permanently deprive you of anything?

[Griffith:] She -- she committed a theft.

[Defense Counsel:] Did she permanently deprive you of anything?

[Griffith:] I guess I don't understand that question.

[Defense Counsel:] You got the merchandise back?

---

[4]The State does not dispute that the first step is satisfied.

[Griffith:] Yes, we got the merchandise back.

[Defense Counsel:] Okay. So she didn't really take anything from you?

[Griffith:] She took 68.18 out the doors.

[Defense Counsel:] But you just said you got it back?

[Griffith:] I got it back. If I wouldn't have been there, what would have happened?

[Defense Counsel:] So you're saying that she attempted to take some things from you?

[Griffith:] Yes. If I wouldn't have been there, where would it have been?

Despite defense counsel's proffer of the word "attempted," the testimony did not tend to refute or negate the evidence supporting the State's case. Specifically, the State proved the following facts that Gradney left essentially undisputed:

- Gradney, while using the self-checkout register, did not scan $68.18 worth of items in her shopping cart;

- She paid for the items that she had scanned and then pushed her cart past the registers, the theft-prevention alarms, and the general merchandise doors, i.e., she walked past all points of sale and exited the store;

- She immediately apologized and offered to pay for the items when confronted;

- Her failure to scan and pay for $68.18 worth of merchandise is a common method used by individuals who intend to steal merchandise from Walmart;

- She had used the same methods to take merchandise from that Walmart on at least two previous occasions; and

11

- As Gradney admitted, she knew that her actions constituted a theft.

These undisputed facts establish a fully completed theft. *See Hickman*, 2020 WL 1949022, at \*4; *see also Rodgers v. State*, 608 S.W.3d 506, 514 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (holding sufficient evidence supported theft conviction where appellant scanned and paid for some of his merchandise, but not all of it, at Walmart self-checkout register and then walked past "all 'points of sale'" before being confronted by asset protection associate); *Thomas v. State*, No. 02-15-00216-CR, 2016 WL 3889146, at \*1, \*3 (Tex. App.—Fort Worth July 14, 2016, no pet.) (mem. op., not designated for publication) (holding evidence sufficient to establish completed theft where appellant carried unpaid-for merchandise past the point where she had Walmart's permission to take it); *Barrett v. State*, No. 01-10-00824-CR, 2012 WL 1649855, at \*1, \*3 (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.) (mem. op., not designated for publication) (similar).

Gradney concedes that she left Walmart without paying for everything and that she was stopped outside the store. While it is not clear precisely which element of theft she claims is refuted or negated by Griffith's testimony, her apparent contention is that, because she did not permanently deprive Walmart of its property (i.e., she returned it when caught), she failed to effect the commission of the theft. But "succeeds without getting caught" is not an element of the offense of theft, and nowhere in the statute does it say that a defendant should be rewarded, essentially, for returning the stolen merchandise. *See* Tex. Penal Code Ann. § 31.03; *see also Rodgers*,

12

608 S.W.3d at 513 n.4 ("[I]t is not necessary for the defendant to succeed in carrying the stolen property away from the scene."); *Palmer v. State*, 471 S.W.3d 569, 571 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (rejecting argument that appellant was entitled to attempted-theft instruction because stolen property had been returned to its owner); *Hicks v. State*, No. 12-13-00158-CR, 2014 WL 1922619, at *3 (Tex. App.—Tyler May 14, 2014, no pet.) (mem. op., not designated for publication) (holding appellant was not entitled to lesser-included-offense instruction on attempted theft where she put unpaid-for merchandise in her bag and then returned it when confronted by store manager and security officer); *Cantrell v. State*, No. 05-92-01220-CR, 1994 WL 24386, at *2 (Tex. App.—Dallas Jan. 31, 1994, no pet.) (not designated for publication) ("[A] temporary deprivation with the requisite intent to permanently deprive sufficiently establishes the crime of theft.").

Moreover, regardless of whether Walmart had recovered its property, proof of a completed offense remains intact and undisputed. Indeed, multiple witnesses explained—and circumstantial evidence showed—that Gradney's failure to scan and pay for $68.18 worth of merchandise was not an accident but was intentional. Surveillance footage from multiple angles showed the jury how she did it and her actions thereafter. She did not offer any evidence tending to dispute the State's evidence that she had exercised control over the property in areas where she lacked Walmart's consent to take it: past all points of sale. And Gradney herself had acknowledged that her actions constituted theft. With the greater offense having been

13

completed, Griffith's testimony that Walmart was able to recover the stolen merchandise would not tend to show only the lesser offense of attempted theft. The record thus contains no evidence that would establish an attempted theft as a valid, rational alternative to the charged offense. *See Hall*, 225 S.W.3d at 536.

Accordingly, Gradney was not entitled to a lesser-included-offense instruction on attempted theft, and the trial court correctly refused the instruction. We overrule her sole issue.

### III. Conclusion

Having overruled Gradney's sole issue, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 13, 2025